URIAH H. LEWIS, Appellant, *v.* NEW YORK, ONTARIO AND WESTERN RAILWAY COMPANY, Respondent.

Carriers — negligence — when railroad company, which contracted to transport a loaded freight car from one point to another, not liable for injury to employee of consignee caused by improper loading of car.

Where a railroad company contracted with a consignor to transport a carload of hay from one place on its railroad to a consignee at another point, but did not load the car, which was loaded and closed by the shipper, or have anything to do with it, except to receive and seal the car, after it was loaded and closed, and then take it to its destination and deliver it to the consignee, who assumed the work of unloading, the duty of the company was merely one of transportation, and when it had delivered the car at its destination its duty was ended. The company is not liable, therefore, to an employee of the consignee who was injured by bales of hay which fell upon him while opening the car door, because such bales had been improperly and negligently loaded in the car. (*Ford* v. *L. S. & M. S. R. R. Co.*, 124 N. Y. 493, distinguished.)

*Lewis* v. *N. Y., O. & W. Ry. Co.*, 151 App. Div. 949, affirmed.

(Argued February 12, 1914; decided March 3, 1914.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered June 8, 1912, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*O. M. Reilly* for appellant. The defendant was bound to carry on its business under a proper system and to make, observe and enforce reasonable rules and regulations in the loading and sending out of its cars and to properly inspect them before they were sent out, and if through a failure to do so a servant or other person hav-

ing the right to be in the vicinity of its cars and a right to unload them is injured the defendant is liable. (*Abel* v. *D. & H. C. Co.*, 103 N. Y. 581; *Spooner* v. *D., L. & W. R. R. Co.*, 115 N. Y. 32; *Ford* v. *L. S. & M. S. R. Co.*, 124 N. Y. 493; *Pendergast* v. *N. Y. C. & H. R. R. R. Co.*, 152 App. Div. 955; *Judd* v. *Lake Shore & M. S. Ry. Co.*, 155 App. Div. 1.) The duty of seeing that this car was properly loaded was the duty of the defendant, and that duty could not be delegated to another. Whoever loaded it represented the defendant, and his act or his negligence was the negligence of the defendant. (*Bushby* v. *N. Y., L. E. & W. R. R. Co.*, 107 N. Y. 374; *Robinson* v. *N. Y. & P. S. S. Co.*, 63 App. Div. 211; *Blossom* v. *Griffin*, 13 N. Y. 569.) As soon as the hay came into the custody of the defendant for transportation its liability as a common carrier began, and it cannot escape liability on the ground that the shipper was liable instead. (*Ames* v. *Fargo*, 114 App. Div. 667.) When the defendant threw this car in on the switch it was an invitation to the consignee and its servants to come there, open the door and unload it, and when the plaintiff came there he had a right to assume that this car was safely loaded and that no danger would come to him by opening the door in the usual way. And this was especially so in view of the fact that he had never known of baled hay falling out when the door was opened. (*Higgins* v. *Ruppert*, 124 App. Div. 530; *Davis* v. *Ferris*, 29 App. Div. 623; *Schnizer* v. *Phillips*, 108 App. Div. 17; *Dutton* v. *Greenwood Cemetery Co.*, 80 App. Div. 325; 2 Cooley on Torts, 1267.)

*P. W. Cullinan* for respondent.

Cardozo, J. The plaintiff was employed in a hay and coal yard in Fulton, New York. A carload of hay carried over the defendant's railroad was switched on a side track to be unloaded by the consignee. The plaintiff and another man undertook the work of unloading it. While

the plaintiff was forcing open the door of the car with a crowbar some bales of hay which had been piled end upon end, close to the door, struck him and caused the injuries for which he sues. There is evidence that the customary method of loading a car is to lay the bales flat in the space near the door. Piled endwise they are less secure, and when the protection of the door is released there is nothing to stay their fall.

We may, for the purpose of this appeal, assume without deciding that the car was negligently loaded, and that there was no contributory negligence in the plaintiff's conduct. The question remains whether the negligence, which we thus assume, is chargeable to the defendant. The defendant did not load the car. That was done by the shipper. All that the defendant did was to seal the car after the hay had been placed in it by the shipper and the door had been closed. The defendant neither packed the hay nor observed how the shipper had packed it. To charge the defendant with liability, we must, therefore, be prepared to hold that after the car had been loaded and closed by the consignor the defendant was under a duty to inspect the contents in order to protect the consignee. We think that in the circumstances of this case such a duty did not exist. The general rule is that a railroad is bound to load and unload its cars, and until it has done the work of unloading delivery to the consignee is not complete. (*London & L. F. Ins. Co.* v. *Rome, W. & O. R. R. Co.*, 144 N. Y. 200, 205; *Benson* v. *Gray*, 154 Mass. 391, 394.) This rule, however, may be varied by contract or by a course of dealing, and is perhaps not applicable in its full force to carloads of bulky freight. (*Schumacher* v. *C. & N. W. Ry. Co.*, 207 Ill. 199, 206; *Mill Co.* v. *B. C. R. & N. Ry. Co.*, 102 Iowa, 262; *Ry. Co.* v. *Bruce*, 55 Ark. 65, 71.) If the consignee undertakes to unload the car, which is switched for convenience on a side track in his yard, the carrier's function ends, and delivery is complete when the car is thus placed in

the custody of the consignee.   In this case the consignee
assumed the work of unloading as his own.   He had no
reason to believe that the work of loading at the other
end of the route had been done by the railroad, and
the fact is, as we have seen, that it had been done by
the consignor.   It was through the consignor that the
contract of carriage had been made, and the consignee in
accepting the shipment adopted the contract thus made
in his behalf.   (*Nelson* v. *H. R. R. R. Co.*, 48 N. Y. 498;
*Donovan* v. *Standard Oil Co.*, 155 N. Y. 112, 119.)
Indeed, the defendant's tariff schedules filed with the
interstate commerce commission and the public service
commission, show that "bulk freight will not be taken
in less than carloads," and that "owners will be required
to load and unload freight in carloads when carried at
carload rates."   Both consignor and consignee must,
therefore, be taken to have understood that the defend-
ant's contract was confined to the transportation of a
car, to be loaded by the consignor at one end of the route
and unloaded by the consignee at the other.

In these circumstances, we think that the defendant
was under no duty toward the consignee to establish a
system of inspection in order to guard against the conse-
quences of careless loading by the shipper.   We do not now
determine what the carrier's measure of responsibility
may be where its own agents have shipped the freight.
We may also leave open the question whether any differ-
ent conclusion is required in the case of the carriage of an
explosive or other dangerous article.   We are concerned
now with the rule applicable to the carriage of the com-
mon products of the farm or the factory.   We think that
in such a case as this, the carrier's duty toward the con-
signee is merely one of transportation.   A car is received
by it, completely packed, which it undertakes to haul to
a stated destination, and when it has done that, its duty
ends.   To hold that a carrier impliedly undertakes to
inspect for the consignee's protection all cars that come

into its custody, no matter where loaded or by whom, would be to impose an unjust burden. It often happens that shippers furnish their own cars. (*Mallory* v. *Tioga R. R. Co.*, 39 Barb. 488; affd. in this court, 32 How. Pr. 616; *Spears* v. *L. S. & M. S. R. R. Co.*, 67 Barb. 513.) It happens still oftener that the cars at the point of destination are on the line of a connecting railroad. The rule to be laid down in respect of a carrier's duty toward the consignee must be flexible enough to adjust itself to these varying conditions. The statute (Public Service Commissions Law [L. 1913, ch. 344], sec. 37) now requires a railroad to furnish to all persons who apply therefor and offer property for transportation, sufficient and suitable cars for the transportation of such property in carload lots. Where this is done, and the situation makes it plain that the carrier is to take no part in the work of loading and unloading, its duty toward the consignee is fulfilled when it transports the freight in safety.

We must not be understood as intending by this decision to limit a carrier's duties, either toward its own employees or toward the public, while the car is in transit and its function as carrier continues. If lumber is improperly loaded in an open car, as was the case in *Ford* v. *L. S. & M. S. R. R. Co.* (124 N. Y. 493), with resulting injury, while the car is in motion and under the carrier's control, liability will follow. No such situation is presented here. The car was securely closed; it was properly constructed; the transit was completed in safety; and for the injury that resulted to the consignee's employee, after the car had passed into the consignee's possession, the defendant is not liable.

The judgment should be affirmed, with costs.

WILLARD BARTLETT, Ch. J., HISCOCK, CHASE, CUDDEBACK, HOGAN and MILLER, JJ., concur.

Judgment affirmed.