### MARTIN v. SOUTHERN PAC. CO.
#### No. 22076–S.

District Court, N. D. California, S. D.

Aug. 14, 1942.

Hubert Wyckoff, Jr., and George M. Naus, both of San Francisco, Cal., for plaintiff.

A. B. Dunne and Dunne & Dunne, all of San Francisco, Cal., for defendant.

ST. SURE, District Judge.

Plaintiff sues for damages for personal injuries sustained when a steel door of a freight car fell upon him. He was employed by a contractor performing work for the United States government at a military camp near Ford Ord, California. It was his duty to check lumber and other materials unloaded from freight cars.

Plaintiff alleges that at the time of the injuries defendant owned and operated a railroad system between Los Angeles and Fort Ord; that "on July 22 or 23, 1941, defendant negligently delivered to plaintiff's employer at Fort Ord, for the purpose of unloading, a freight car, loaded with freight, which car was negligently equipped with a defective steel door."

The freight car, belonging to Chicago, Milwaukee, St. Paul and Pacific Railroad Company, arrived at Los Angeles in the possession of Union Pacific Railroad. The Union Pacific loaded the car with celotex and closed and sealed the car with its seals. The car was consigned to the consignee at Fort Ord. Before release the car was inspected by the Union Pacific and placed in the yards of the Southern Pacific Company for interchange to that company.

It was an automobile freight car with double doors, each about six feet wide and ten feet high, and each weighing about 700 pounds. On either side of the door-opening there were posts fastened to the car, and a center post was formed when the doors were closed and fastened top and bottom. The doors moved in a guide at the top and on rollers at the bottom. The doors projected into a space between the guide rail and the car, and the overhang of the guide rail held the doors in place.

On the morning of July 23, 1941, the car was delivered with the seals unbroken to the

consignee at Fort Ord. The seals were broken and the right door partially opened by the military authorities. The employees who opened the doors testified that when they started work the left door was latched and the right door open about a foot. They pushed open the right door. The left door was stuck, and although three of them pushed and pulled it they were unable to move it. One of them tried unsuccessfully to pry it with a piece of lumber, 2x4. Someone then called the driver of a motorized lumber-carrier. Two employees testified that it was plaintiff who called the driver. Plaintiff stated that he had no recollection of this, and had nothing to do with the door until it fell on him. One of the men in the car held a 2x4 against the edge of the door. The carrier eased up against the 2x4 and pushed a short distance. The 2x4 dropped, was replaced, and the carrier pushed again, moving the door in the two trials from one to two feet. While applying force to the door the carrier was about a foot away from the side of the car, so that the force applied was at a slight angle to the door guide. After the door was partially opened by the carrier, one man jumped to the ground and pushed while two others pulled the door wide open. There is evidence that the lumber-carrier driver then said "Look out, the door is loose," or words to that effect. He could have said "Watch out, the door is loose on top."

One of the employees testified that before the men started to open the door he told plaintiff he would get a pinch-bar to assist in unloading the car, and that plaintiff told him to go ahead; that when he returned plaintiff was among the group waiting for the bar; that the door was then wide open; that plaintiff took a piece of loose bracing from the floor of the car. As this employee was about to use the bar on the dunnage he saw the top of the door about two feet from the wall of the car, and called, "Joe, look out!" At this moment the door fell upon plaintiff.

Plaintiff testified that he walked up to the door-opening to get a manifest that was nailed inside the car and the door fell upon him. That is all he remembers.

There is no substantial conflict in the testimony with respect to the condition of the door and guide after the accident. It was found that there was a gradual arc in the guide, starting at about the center of the guide and running left for a distance of from eight to ten feet. At the highest point of the arc the distance between the top guide and the bottom rail on which the rollers of the door rested was from three-quarters to seven-eighths of an inch greater than between the level portion of the top guide and the bottom rail. At this point the top of the left door projected into the guide three-eighths of an inch. About a foot or eighteen inches to the right of the left upper corner of the door-opening there was a fresh mark on the bottom of the guide about an eighth of an inch wide and a foot long, something like a rough file mark. The significance of this mark does not appear from the testimony, except that it indicates friction of metal upon metal at the time the door was opened. The left upper corner of the door was bent outwards one-half inch for a distance of twenty-two inches crosswise and eleven inches lengthwise. There was testimony that this bend would tend to lead the door out of the guide. Whether it was a new or old bend does not appear.

Defendant produced evidence that the door posts on both sides of the door-opening were fractured, and that these breaks could not be seen from the outside when the doors were closed and sealed. A Southern Pacific car foreman testified that these fractures would weaken the entire roof of the car, and that the force applied by the lumber-carrier might cause the top guide to be sprung.

Plaintiff invokes the doctrine of res ipsa loquitur, citing, in support of his contention, Erie R. Co. v. Murphy, 6 Cir., 108 F. 2d 817, 126 A.L.R. 1093, and Pitcairn et al. v. Perry, 8 Cir., 122 F.2d 881.

For this doctrine to be applicable, the instrumentality causing the accident must be under the exclusive control of the defendant, and the facts and circumstances of the accident must be such that there could be no reasonable inference except that the injury complained of was due to the negligence of defendant or of others for whose acts he is legally responsible. 45 C.J. §§ 780, 781, pp. 1212, 1215.

The Union Pacific record of outbound inspection shows that the train, of which this car was one, was inspected by Union Pacific after loading and sealing and before its release to defendant. The Southern Pacific Company record shows that the car was inspected at night on July 16 at Los Angeles on the Southern Pacific Company track used for interchange purposes. The inspector

956

used a hand lamp. The employee who made this inspection testified that it included an examination of the door from the ground at the center of the car to see that the door hangers are in place; to see that the nuts are on the bolts, and to inspect the top and bottom railings. He stated that he would be able to see a slight upward bulge in the top rail. During the night of July 17 an outbound inspection was made, which the inspector testified included a thorough inspection of every part of the car. He said: "We gave it the usual inspection we give to everything at all times." He further testified that the lantern would have shown a defect in the top guide. A similar inspection was made in daylight at San Luis Obispo on July 18. The inspector testified that the train was given the "usual inspection". He further testified that a car inspector could not determine from the ground whether the top guide of a door was sprung upward three-quarters of an inch. The train was given a "regular inspection" at Watsonville Junction on July 18 at night.

■ On four occasions, the evidence shows, the car received the usual and regular inspection given by defendant to foreign cars, and no defect was noted in the course of any inspection. This evidence is substantial and undisputed and establishes the fact that the inspection made was reasonable and measured up to the standard of ordinary care. Canadian Northern R. Co. v. Senske, 8 Cir., 201 F. 637, 642-645. It seems quite clear that the doctrine of res ipsa loquitur is inapplicable. See Pass et al. v. Gulf, C. & S. F. R. Co., Tex.Civ.App., 83 S.W.2d 729; Colorado & S. R. Co. v. Rowe, Tex. Com.App., 238 S.W. 908, 912; Deister v. Kansas City N. W. R. Co., 271 Mo. 63, 195 S.W. 499; State v. Sprague, 201 Minn. 415, 276 N.W. 744, 747; Kleimenhagen v. Chicago, M. & St. P. R. Co., 65 Wis. 66, 26 N.W. 264.

The cases cited by plaintiff are readily distinguishable. In the Erie case, supra, the court found that a reasonable inspection would have revealed the defect. In the Pitcairn case, supra [122 F.2d 883], the appellate court said, "Whether the rule or doctrine of res ipsa loquitur is applicable is dependent on the circumstances of each case," and that under certain circumstances "the fact of the injury itself is deemed to afford sufficient evidence to support recovery *in the absence of explanation by the defendant tending to show that the injury was not due to its want of care.*" (Emphasis supplied.) The court sustained an instruction of the trial court, stating: "The court instructed the jury that if they found that the door would not have fallen from the track if it and its supporting appliances had been in good repair, and that the means of knowing what kind of defect, if any, caused the door to fall was exclusively and entirely within the knowledge and control of the defendants * * * they could find defendants liable," etc. In the case at bar the car was not in the exclusive control of defendant at the time of the accident, nor was the means of knowing of any defect in the door exclusively within the knowledge and control of defendant; it is not clear whether the door fell because of a defective condition or because of the manner in which it was opened; and further, there was an explanation by defendant tending to show that the injury was not due to its want of care, rendering the doctrine of res ipsa loquitur inapplicable.

The evidence shows that the defendant, after making the usual and regular inspections, had delivered the sealed car to the consignee, the seals had been broken before the accident, and the right door partially opened; the manner in which the left door was opened was under the control of three employees and a lumber-carrier; and according to the testimony of two witnesses, plaintiff directed the lumber-carrier to assist in opening the door. It is a matter of conjecture whether the door fell off because of the force exerted on it by the men, the use of the 2x4, the use of the lumber-carrier, because of the arc in the top guide, the fractured door posts, or a combination of these elements. There is testimony that the force applied at an angle by the lumber-carrier could have sprung the top guide.

The plaintiff having failed to sustain the burden of proving negligence as alleged is therefore not entitled to recover.