ROSALIE NOVELLO, administratrix, *vs*. TRUSTEES OF NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Suffolk.    April 5, 1949. — April 28, 1949.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Negligence*, Railroad: freight car.    *Railroad*, Freight car.

No breach of duty nor negligence on the part of the defendant toward the plaintiff in an action against a railroad was disclosed by evidence showing merely that the only connection the defendant had with a freight car, not its property, was to transport the car over its line to its terminal after the car had been loaded by others with watermelons in Florida, where boards had been nailed across the door openings to hold in the watermelons, and that upon arrival of the car and notice thereof to the consignee the plaintiff with permission of the consignee broke the seal and entered the car to inspect the watermelons and was injured when, in leaving it, he sat upon one of such boards and it gave way under him because it was defective.

TORT, originally by Vincenzo Novello and after his death prosecuted by the administratrix of his estate.    Writ in the Municipal Court of the City of Boston dated October 9, 1944.

Upon removal to the Superior Court, the action was tried before *Brogna*, J.

*N. W. Deering*, for the defendants.

*S. H. Rudman*, (*A. W. Parker* with him,) for the plaintiff.

LUMMUS, J.    The plaintiff's intestate, Vincenzo Novello (hereinafter called the plaintiff), brought this action to recover for personal injuries sustained by him on a freight car at the defendants' freight yard in Boston on May 27, 1944.    The defendants were trustees operating the New York, New Haven and Hartford Railroad.    There was a verdict for the plaintiff, and the defendants alleged exceptions.

The evidence may be summarized as follows.    The freight car in question was the property of another railroad.    It

was loaded with watermelons in Florida. The watermelons were piled four high. The car had screen doors for ventilation. Three boards, running across the door opening, and nailed to the car, held the watermelons in the car after the door was opened. The car was shipped by Knowles & Company in Florida, consigned to a produce broker named Charles in Boston. Charles testified that on the morning of May 27, 1944, having been notified by the defendants that the car had arrived, he went to see the car with a prospective buyer. When he was about three hundred feet away from the car, he saw the plaintiff climbing into the car alone. When Charles arrived at the car, the plaintiff was climbing out. The plaintiff sat on the top board, which gave way, either because it broke or because a nail gave way, and the plaintiff fell and was hurt. Charles testified that he had had no talk with the plaintiff before the accident. But there was other testimony that Charles had permitted the plaintiff to break the seal of the car to enable him to enter to inspect the watermelons, and that the board gave way because it was rotten. There was also other testimony that four or five men entered the car ahead of the plaintiff. The purpose of the boards was merely to keep the watermelons in the car. They were not intended to support the weight of a man. A stepladder was usually used in entering a car.

The consignee Charles had authority to unload or to do whatever was necessary in regard to unloading the car. The watermelons belonged to Knowles & Company, and the duty of Charles was to sell them in the car and let the buyer unload them. The owner could keep the car on the track as long as he wished, if he paid the demurrage.

There was one exception to the admission of evidence. Charles was asked by the plaintiff whether it was the custom for prospective buyers of watermelons to enter the car to inspect them before they bought. Subject to the exception of the defendants, Charles was allowed to answer, "When a car is sold to a prospective buyer, it is customary to allow inspection." This answer added nothing to the evidence of

liability.   Apparently the answer meant that after a sale had been negotiated the buyer might inspect the goods before taking them.   There was nothing to show that the defendants were a party to, or knew of, any such custom.

The defendants had nothing to do with the selection or loading of the car, the fastening of the door or the nailing of the boards.   All that was done in Florida.   All the defendants did was to transport the car from the southern end of their railroad to Boston.   There is no evidence that the defendants ever examined or were entitled to examine the inside of the car.   The car remained sealed until after it had arrived in Boston and Charles had been notified of its arrival.   The evidence in this case discloses no breach of duty to the plaintiff on the part of the defendants.   *White* v. *New York, New Haven & Hartford Railroad,* 25 R. I. 19. *Pass* v. *Gulf, Colorado & Santa Fé Railway,* (Tex. Civ. App.) 83 S. W. (2d) 729.   *Copeland* v. *Chicago, Burlington & Quincy Railroad,* 293 Fed. 12.   *Martin* v. *Southern Pacific Co.* 46 Fed. Sup. 957.   We think there was error in the denial of the motion of the defendants for a directed verdict in their favor.

*Exceptions sustained.*
*Judgment for the defendants.*