**SHAPIRO et al. v. EMBASSY DAIRY, Inc.**
**(Kirsch, third party defendant).**
**Civ. 400.**

United States District Court
E. D. North Carolina, Wilson Division.

June 9, 1953.

Gardner, Connor & Lee, Wilson, N. C., for plaintiffs.

Thorp & Thorp, Rocky Mount, N. C., for defendant.

GILLIAM, District Judge.

The action was brought against Embassy Dairy, Inc., alleging personal injuries sustained in a collision in North Carolina between the automobile in which they were riding as guests of one Joseph J. Kirsch, and an automobile tractor and trailer belonging to Embassy Dairy which was being operated by one Bunce, with the owner's consent. The complaint alleges that "said

collision resulted from the negligence and carelessness of the said defendant, by its agent * * *." Joseph J. Kirsch, driver of the vehicle in which plaintiffs were guests, was made a third party defendant upon Embassy's motion.

By answer to the complaint Embassy denies the allegation of negligence on the part of its agent and sets up three further defenses, as follows: (1) That "plaintiffs' injuries were the proximate result of the sole negligence of Joseph J. Kirsch * * *"; (2) identical paper writings by which each of the plaintiffs for valuable consideration released and discharged Kirsch from all liability on account of the collision, which it alleges estops plaintiff to prosecute the action; and (3) release of any liability that may have existed on its part by reason of the release of Kirsch, a joint tort feasor.

Thereupon, plaintiffs filed their motion to strike the second further answer and defense, asserting that "the agreements of settlement between plaintiffs and Kirsch * * * show upon their face that they are no defense to this action."

In the second further defense Embassy alleges these facts: about two years before this action was begun the plaintiffs brought action against Kirsch in New York for recovery of damages for their injuries, alleging that the occurrence resulting in such injuries "was due to the negligence of the defendant (Kirsch) in the management, operation and control of his motor vehicle * * *."; plaintiffs reached a settlement with Kirsch in that suit whereby Kirsch and his insurance carrier, Maryland Casualty Company, agreed to pay to Regina Shapiro $25,000, and to Irving Shapiro $15,000, on account of their respective injuries; the agreed amounts were paid and thereupon each executed an instrument stating: "I * * * remise, release and forever discharge the said Joseph J. Kirsch and the Maryland Casualty Company * * * of and from all * * * causes of action, * * * claims and demands whatsoever, * * * which against Joseph J. Kirsch and the Maryland Casualty Company I ever had, now have or may have * * * upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of these presents"; each paper writing contained this reservation: "I hereby expressly reserve all my rights against Embassy Dairy, Ins., and/or Augustus B. Bunce, arising out of accident which occurred on February 13, 1949, on U. S. Route 301, near Wilson, N. C." These instruments were executed in the State of New York.

Two questions arise:

1. Should the instruments executed in New York be construed in accordance with the law of that State or with the law of North Carolina.

2. Does the absolute release from liability of Kirsch, a joint tort feasor, release from liability Embassy, the other joint tort feasor, notwithstanding the reservation of rights against Embassy included in the instruments of release.

There are several New York decisions holding that releases of the type being considered do not operate to discharge the liability of other joint tort feasors. For example, Bossong v. Muhleman, 254 App. Div. 738, 3 N.Y.S.2d 992, 993. The release in that case stated that plaintiff reserved all claims against "Grace M. Muhleman", whose automobile was involved in the same accident, and the Court said: "There was evident intention on the part of plaintiff to reserve a cause of action against the owner of the car * * *. In reserving rights against others liable, it is the intention that controls, and the release constitutes merely a covenant not to sue." As it is clear that a covenant not to sue one joint tort feasor does not operate to discharge another, if the New York rule as set forth in these cases is applied the plaintiffs' motion should be allowed, as in that event the releases set up, it can be contended, constitute no defense to the asserted claim of plaintiff against Embassy.

Undoubtedly, in determining generally the validity or effect of a contract between the parties the law of the State where it is executed is to be applied. As said in Cannaday v. Atlantic Coast Line Railroad Co., 143 N.C. 439, 442, 55 S.E.

836, 837, 8 L.R.A.,N.S., 939: "It is settled that 'matters bearing upon the execution, interpretation, and validity of a contract are determined by the law of the place where it is made.'" But in that case, as in others of like import, the Court was dealing with the rights of the parties to the contract, while here we are concerned with the rights of a third party in a suit pending in North Carolina wherein the substantive rights of the parties are to be determined in accord with North Carolina law, since the collision giving rise to plaintiffs' cause of action occurred here. Harrison, Adm'r v. Atlantic Coast Line Railroad Co., 168 N.C. 382, 84 S.E. 519. This being true, it seems that Embassy may assert any defense it may have under North Carolina law, even though such defense would not avail under New York law.

There are many authorities, decided cases and texts, which are in apparent conflict with the New York rule, and while no North Carolina case involving a release containing reservation of rights against other joint tort feasors has been found, in Howard v. J. H. Harris Plumbing Co., 154 N.C. 224, 70 S.E. 285, the North Carolina Court by dictum has approved the rule prevailing in other jurisdictions that a release such as we have here operates as a full discharge of all joint tort feasors. In the case mentioned above, we find this statement at page 227 of 154 N.C., at page 286 of 70 S.E.: "Citing a wealth of authority, English and American, Judge Cooley says: 'It is to be observed in respect to the point above considered, where the bar accrues in favor of some of the wrongdoers by reason of what has been received from or done in respect to one or more others, that the bar arises, not from any particular form that the proceeding assumes, but from the fact that the injured party has actually received satisfaction, or what in law is deemed the equivalent. Therefore, if he accepts the satisfaction voluntarily made by one, that is a bar to all. And so a release of one releases all, although the release expressly stipulates that the other defendants shall not be released. And this rule is held to apply,

even though the one released was not in fact liable. It does not lie in the mouth of such a plaintiff to say he had no cause of action against one who paid him for his injuries, for the law presumes that the one who paid committed the trespass and occasioned the whole injury.'"

It is stated in 45 A.J. at page 701, that "* * * a release under seal of one joint tort feasor releases all is usually held true even though there is a reservation of rights against the others." The decision in Bland v. Warwickshire Corp., 160 Va. 131, 168 S.E. 443, is squarely in point. In this case the Virginia Court refused the motion to strike, holding that the release executed released a joint tort feasor against whom the injured person undertook to reserve his claim. See also McLaughlin v. Siegel, 166 Va. 374, 185 S.E. 873.

■ In my opinion, under the more logical rule, though it may be opposed to the New York rule, the asserted defense is a valid one. Furthermore, I am not fully convinced that it would not be valid under the New York rule. In the case of The Adour, D.C., 21 F.2d 858, it appeared that libellant, injured in New York, settled an action which he had brought against a stevedoring company for $7,500 and signed a release of all claims against it, reserving rights against The Adour, in the unloading of which he had been hurt. The action against The Adour was dismissed by Judge Coleman because, as he held, the unconditional release of the stevedoring company also released the ship. In the opinion, Judge Coleman makes these observations, 21 F.2d at pages 861–862: "Under the law of New York, an instrument such as the present one is construed as a covenant not to sue. * * * On this theory, if there has, in fact, been no complete satisfaction through the transaction covered by the release, further recovery has been allowed under the New York decisions. * * * But where the release is unconditional, or if full satisfaction has been accorded in the first instance, it is held to be a bar. * * * Upon first reading, there is an apparent conflict in the New York decisions, but upon careful analysis they are

believed capable of being reconciled as above. * * * Where it is apparent from the paper that the intention is to discharge the liability of one of the joint wrongdoers, the correct rule, because otherwise courts would promote double payment for the same wrong is that the entire liability is thereby extinguished, and that any clause by which parties seek to reserve a right of action against the other wrongdoer is repugnant to the release and void."

Even though the Court were to give to the releases the construction most favorable to plaintiffs, the motion would not be allowed, since the Court should be fully advised of the settlement of the New York case so that all issues may be submitted to the jury on the question of whether plaintiffs have already received full satisfaction for their injuries.

An order will enter denying plaintiffs' motion to strike.