James Shipley, Plaintiff-Appellant, v. Southern Pacific Company, a Corporation, and the Pennsylvania Railroad Company, a Corporation, Defendants-Appellees.

Gen. No. 48,633.

First District, Third Division.

September 18, 1963.

James A. Dooley, of Chicago, for appellant.

Nygren & Holloway, William S. Jacobs, and John N. Kern, all of Chicago, for appellee, Southern Pacific Company, and Robert H. Bierma, A. L. Foster, and Kirkland, Ellis, Hodson, Chaffetz and Masters, all of Chicago (Max E. Wildman and Frederick W. Temple, of counsel), for appellee, the Pennsylvania Railroad Company.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from a judgment on a verdict of not guilty in a personal injury suit. Plaintiff sued to recover for injuries incurred when sheets of plywood fell on him while he was unloading a boxcar on November 26, 1952 at the Washington, D. C. yards of his employer, United States Plywood Corporation, which was both consignor and consignee of the shipment. Originally named as defendants were four railroads—South-

ern Pacific Company, Pennsylvania Railroad Company, Texas and New Orleans Railroad Company and the St. Louis Southwestern Railway Lines. Each had carried the car for a portion of the journey from the plywood company's yards in Mapleton, Oregon, where it had been loaded on November 5, 1952, to its siding in Washington, D. C., where it arrived on November 21st and was unloaded on November 26, 1952. After the trial had commenced, plaintiff voluntarily dismissed the action as to defendants Texas and New Orleans Railroad Company and St. Louis Southwestern Railway Lines.

It is plaintiff's theory that the car was properly loaded prior to its delivery to the Southern Pacific Company in Oregon; that the plywood fell on plaintiff because the load had shifted during transit; that such shifting was caused by one violent impact, in the opinion of plaintiff's expert witness, or as plaintiff's counsel suggests, by a series of violent impacts; that such impact or impacts occurred when the Southern Pacific Company and the Pennsylvania Railroad Company humped [1] the car; that defendants' negligence, as plaintiff states it, lies in the fact that this humping was done despite the fact that the car was posted on both ends with signs which warned "Do Not Hump." While the foregoing is plaintiff's basic and principal argument, he also argues that it was negligence for defendants to hump a car of lumber, even if it had not been posted with a "Do Not Hump" sign, and that the terminal carrier, Pennsylvania Railroad Company, was negligent in failing to break the seal and inspect the condition of the load to determine whether it was safe to unload.

---

[1] "Humping" is a common railroad term defined as a switching operation, in which a car is pushed up a grade and then permitted to run free downgrade to the desired spot, without propulsion, except for gravity.

3

The boxcar was loaded with 78,000 pounds of plywood by the United States Plywood Corporation at its Mapleton, Oregon yards. The sheets were 8 feet long and 4 feet wide and varied in thickness from ¼ to ¾ths of an inch. They were loaded in bundles 32 inches high each, four bundles making one stack. Nine stacks, each approximately 10 feet 8 inches high, were placed in the car. Between the last two stacks there remained a space of about 42 inches in which timbers were securely wedged so as to buttress the stacks and keep them from shifting. After the car had been loaded, an "Unload from This Side Only" sign was placed on it near the door through which it had been loaded and an "Unload Other side" sign was placed on the opposite side of the car. As to any other signs being placed on the car at Mapleton, Oregon, the superintendent employed by the plywood company at that plant testified, as plaintiff's witness, that "Do Not Hump" signs were *not* placed on the car there and *that he never had a supply of such signs at Mapleton.* The head car loader of the plywood company testified by deposition that he was in charge of whatever cards mights have been placed on the car at Mapleton and *that he never placed any "Do Not Hump" cards on any car shipped out of Mapleton, nor was there any supply of such cards there.* The testimony of these two witnesses remained uncontroverted.

On November 5, 1952 the boxcar was turned over to defendant Southern Pacific Company, which humped the car in a retarder yard [2] at Los Angeles on Novem-

[2] In a yard containing retarders, each car passes through three sets of retarders, a master, an intermediate and a final one. A retarder operator is located in a tower. He orders a brakeman to hop on any car which is shown to contain a load subject to damage. The brakeman rides the car down to see that there is no impact. The purpose is to control the speed with which the car goes down the grade.

4

ber 11, 1952 and which flat-switched the car on five other occasions before turning it over to the Texas and New Orleans R. R. Co. at El Paso, Texas. The Texas and New Orleans switched the car at San Antonio and at Hearne, Texas before turning it over to the St. Louis Southwestern at Corsicana, Texas. The latter moved the car to East St. Louis, where it came under the control of defendant Pennsylvania Railroad, which delivered it to the plywood company's siding at its yard in Washington, D. C. Enroute, the Pennsylvania flat-switched the car at Rose Lake, Illinois and at Indianapolis, Indiana and humped it at its Enola yard at Harrisburg, Pa., which is equipped with automatic retarders.

Five days after the car had been delivered to the plywood company's yard at Washington, D. C., plaintiff and his foreman broke the seal and opened the door. They saw that some of the timbers intended to buttress the stacks were broken. Nevertheless the two men proceeded to unload the plywood. They did so from the side containing the "Unload Other Side" sign; that is, from the wrong side. They first removed some of the broken bracings. They next unloaded by hand, a sheet at a time, the top two bundles of a stack situated in front of the door. They removed the last two bundles by using a fork lift. Plaintiff then entered the car to take out some stripping which had been under the stack they had removed. While doing so, he was injured when plywood from one of the other stacks fell on him.

Plaintiff testified that when he was unloading the car, he saw a "Do Not Hump" sign on it. His foreman who was with him during the unloading testified on direct examination that he *did not remember* seeing such a sign on the car, and on cross-examination, that he *did not* see such a sign on the car. Plaintiff's further evidence is that a force of 15,400 pounds was re-

5

quired to break each one of the timbers used for bracing the stacks and that such a force would not be generated in a normal and reasonable handling of the car.

Plaintiff argues that the court should have granted his motion for a judgment n. o. v. Defendant Southern Pacific Company argues that the record does not show any evidence of negligence on its part which justified the submission of the case against it to the jury. Defendant Pennsylvania Railroad Company urges that there is no evidence against either defendant which justified submission of the case to the jury and that a directed verdict should have been granted as to both defendants. If the argument of defendants is sound, it will dispose of the entire case. We will therefore proceed to consider whether plaintiff made a prima facie case of negligence on the part of either or both of the defendants.

■ The question presented for this purpose is whether there is any evidence, which taken with all reasonable inferences to be drawn therefrom in its aspects most favorable to plaintiff, tends to prove the essential elements of his case. There is a qualification to this general statement, and that is, that the court may consider the material facts established by the uncontroverted evidence in the case. Wasson v. Insurance Co. of North America, 25 Ill App2d 35, 165 NE 2d 528; Gardner v. International Shoe Co., 386 Ill 418, 54 NE2d 482; Dixon v. Smith-Wallace Shoe Co., 283 Ill 234, 119 NE 265; Paulsen v. Cochfield, 278 Ill App 596; Friesland v. City of Litchfield, 24 Ill App2d 390, 164 NE2d 606.

■ Defendants are not joint tort feasors. Neither is liable for the acts of the other. As to plaintiff's principal theory of his case, there must be some evidence as to where the humping which caused the load to shift occurred, and that at that time there were "Do

6

Not Hump" signs on the car. For that purpose we must accept as true plaintiff's testimony that he saw a "Do Not Hump" sign on the car on November 26, 1952, even though this was contradicted by the testimony of his foreman. As we have pointed out, however, there must also be considered the *uncontradicted* testimony of plaintiff's own witnesses, the plywood company superintendent and the head car loader at Mapleton, Oregon. They testified that "Do Not Hump" signs were not put on the car at Mapleton; that they never used such signs; and never had a supply of them on hand.

Accepting the fact established by plaintiff himself, the question which arises is where were the signs placed on the car? Plaintiff has offered no direct evidence with respect thereto. Unless the presence of the signs on the car during the humping operations can be established by presumption or by an inference from the subsequent existence of such signs on the car, there is no proof, either direct or circumstantial, that when defendants humped the car, it was posted with a "Do Not Hump" sign.

Defendants argue that while a fact once shown to exist may be projected forward in time, it is not proper to draw an inference that it existed at a prior date, because there always arises the disturbing contingency that some circumstances operating in the interval may have been the source of the subsequent existence. More recent cases however have rejected the view that there can *never* be presumptions back. Gass v. Carducci, 37 Ill App2d 181, 185 NE2d 285. They are allowed when surrounding circumstances are such as to allow a reasonable inference that the condition subsequently established existed at a material prior time. Gass v. Carducci, supra.

The car traveled approximately 3500 miles and was on the road sixteen days before it arrived in the ply-

wood company yard at Washington, D. C. This was approximately nine days after it had been humped by the Southern Pacific. After such humping it traveled approximately 3000 miles, during the course of which it was carried by three railroads, two of which were dismissed out of this suit and concerning whom there is no evidence except that they did not hump the car. Plaintiff did not see the car until some five days after it had been humped by the Pennsylvania. Thus the uncontroverted fact that there was no such sign on the car when it left Oregon, together with the inference that this condition continued forward to a point and time unknown, must be considered in connection with the inference that there was such a sign on the car at some time and place *unknown* before it was unloaded in Washington, D. C. But where and when such sign was put on the car can only be arrived at by speculation, imagination or conjecture, which cannot be made the basis of liability. Tiffin v. Great Atlantic & Pacific Tea Co., 18 Ill2d 48, 162 NE2d 406; Lashmett v. Country Mut. Ins. Co., 29 Ill App2d 281, 172 NE2d 394; Olinger v. Great Atlantic & Pacific Tea Co., 26 Ill App 2d 88, 167 NE2d 595; McKinney v. Illinois Power Co., 26 Ill App2d 193, 167 NE2d 249. It is our conclusion that there is no evidence either direct or circumstantial that such signs were on the car when it was humped by either defendant.

While, as we have said, plaintiff has based his argument principally on the ground that "Do Not Hump" signs were on the car and that therefore it was negligence for defendants to hump the car, he has also argued that the fact that the car was loaded with lumber was in itself sufficient notice to defendants that it should not be humped. It was incumbent upon plaintiff to show not only that a violent impact caused the the load to shift, but also which carrier caused the impact or series of impacts. Again, there is no testi-

8

mony from which it may be determined on which carrier, if any, the impact or impacts which caused the injury occurred. No recovery can be had in a tort action where there are several possible causes of injury, some not involving the negligence of the party charged, if there is no evidence from which it can be determined which of several possible parties produced the injury. Yeazel v. Alexander, 58 Ill 254; Magnolia Petroleum Co. v. Williams, 222 Miss 538, 76 So2d 365 (1954); McCain v. Wade, 181 Miss 664, 180 So 748 (1938).

Plaintiff has failed to establish a case based on the theory that either defendant negligently handled the car. This is so, *not* because we reject plaintiff's valid position that one can establish a case completely on circumstantial evidence, but because we find that there is no evidence, direct or circumstantial, which fairly tends to prove that either of the defendants humped the car when it was posted with a "Do Not Hump" sign, or that humping of the car by either defendant caused the violent impact or impacts which broke the bracings.

Plaintiff also argues that defendant Pennsylvania is liable for failing to deliver the car in a reasonably safe condition for unloading, citing Rylander v. Chicago Short Line Ry. Co., 19 Ill App2d 29, 153 NE2d 225; and Erie Railroad Co. v. Murphy, 108 F2d 817 (Ohio, 1940). These cases involve the duty of the carrier to inspect and discover a defect in the car itself. They do not deal with the problem before us, that is, whether a carrier which did not load a boxcar and which received it sealed and then delivered it to the consignee for unloading, had a duty to inspect the condition of the load to determine whether it was safe for unloading. Those cases which have considered this issue have held that no such duty is imposed on the carrier. See Rocco v. New York Central System, 7 Misc2d 286, 166 NYS2d 371 (1957); Lewis v. New York,

9

Ohio & W. Ry. Co., 210 NY 429, 104 NE 944 (1914); Seeden v. Great Northern R. Co., 242 Minn 360, 65 NW 2d 178 (1954); Butler v. Norfolk Southern Ry. Co., 140 F Supp 601 (NC, 1956); Reed v. Missouri-Kansas-Texas R. Co., 362 Mo 1, 239 SW2d 328 (1951).

In Rocco v. New York Central System, supra, the plaintiff was employed by the consignee of a load of tile pipe contained in the car. He and a fellow worker were opening the car door preparatory to unloading the car when a pipe weighing over 100 pounds rolled out of the car and struck him on the foot. The car in question had been loaded with the pipe by the shipper at Mogador, Ohio, and was there sealed. It was picked up by another railroad and carried to New London, Ohio, where it was transferred to the defendant for carriage and delivery to the consignee at Mt. Vernon, Ohio. The car remained sealed at all times and was delivered to the consignee on its switch, sealed and in good condition so far as could be ascertained by external examination of the car. The plaintiff broke the seal of the car door shortly before the accident. After setting forth the above facts, the court said: "[u]nder the circumstances, the duties of the defendant with respect to the load of tile pipe had solely to do with the transportation and the manner of transportation. It owed no absolute duty to the employees of the consignee to see to it that the load was safe for the purpose of unloading." We accept this position as controlling in the case before us. Under the circumstances in the instant case, defendant Pennsylvania Railroad Company was not required to inspect the load to determine whether it was in a condition safe to unload.

It is our conclusion that plaintiff failed to make a case against either of the defendants and therefore there is no need to consider the other errors which plaintiff has charged in his brief.

10

█ Sometime after the oral hearing plaintiff presented a motion for the submission of additional authorities which he cited with his motion. Defendants filed counter-suggestions, urging us not to allow the motion, but nevertheless answering the points and distinguishing the cases cited. The citing of additional authorities or the making of new points after oral argument is ordinarily improper. This is especially so where the authorities are merely cumulative. This does not apply to the submission of an authority which is new and persuasive of the issue involved. In such a situation the court desires to be informed. Habit and curiosity have made compulsive an examination of the authorities submitted. This makes the action on the motion somewhat academic, but as a matter of precedent we are denying it.

Judgment affirmed.

McCORMICK and DEMPSEY, JJ, concur.