(No. 41067.—

Leo William Conway, Appellant, *vs.* The Belt Railway Company of Chicago, Appellee.

*Opinion filed Sept. 24, 1968.—Rehearing denied Nov. 21, 1968.*

Ernst Liebman, Charles Pressman, and Charles Liebman, all of Chicago, (Pressman & Hartunian, of counsel,) for appellant.

Richard F. Koproske and Glen H. Carrier, both of Chicago, for appellee.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

Plaintiff, Leo William Conway, filed a negligence action against defendant, The Belt Railway Company of Chicago, for injuries sustained while unloading camber beams from a gondola-type railroad car delivered by the railroad to plaintiff's employer, Greenwood Lumber, Inc., of Chicago, the consignee of the shipment. Belt Railway's third party complaint against Greenwood for indemnity under an agreement, in the event the railroad was held liable to plaintiff, was dismissed by directed verdict. The jury verdict of $25,000 for plaintiff against Belt Railway was reversed without remandment by the appellate court. (88 Ill. App. 2d 134.) This court has allowed plaintiff's petition for leave to appeal.

The major issue presented on this appeal is whether the Belt Railway, as the delivering carrier, breached any duty of care owed to the employees of the consignee.

The essential facts are not in dispute. On August 7, 1958, Super Structures, Inc., of Minnesota, loaded six laminated wooden camber beams into a gondola car of the Chicago, Rock Island & Pacific Railroad Company, which transported the car from Minnesota to Chicago. There it was turned over to the Belt Railway, an interchange railroad, which delivered the gondola car with the beams to the consignee, Greenwood Lumber, Inc., plaintiff's employer. Greenwood was to unload the beams and deliver them to the work site of its customer, King Building Supply Company.

Inasmuch as the defective lading is the alleged cause of plaintiff's injuries, a detailed review of the physical facts is warranted.

The gondola car was approximately 65 feet long and 3½ or 4 feet high. The ends of the car could be opened and laid flat. Each beam was 49' 4" long, slightly "V" shaped, so that as the "V" part of the beam rested on the bottom of

the gondola car, the ends of the beams were about 4 feet above the bottom of the "V". Near each end of the gondola car a 6-x-8-inch timber was bolted to, and lay across the top and width of the car, under the protruding ends of the beams. These timbers formed a cradle which held the ends of the beams off the floor of the car, and kept them from tipping backward or forward.

The six "V" beams were packaged in two bundles of three beams each, and each bundle of beams weighed over 8,000 pounds. Each beam was 9 inches wide, so that each bundle of three beams was about 27 inches wide. Vertical timbers or stakes had been placed around the sides of the gondola car and between the two bundles to keep the beams from touching the sides of the car and from contacting each other.

On August 10, 1958, at about 1:00 or 2:00 A.M., when the Rock Island Railroad turned over the gondola car to The Belt Railway, the car was inspected by the latter, and nothing wrong was found with the load. Sometime during August 11, 1958, the gondola car with its load of beams was pushed by a locomotive off the main Belt line down a slight grade into the yard of the Greenwood Lumber company, onto its single track. That same day, when the president of Greenwood, Charles Bournazos, inspected the load, he noticed that the 6-x-8-inch cradle timber at the west end of the car was broken and partially missing, and that the shifted, damaged beams were lying partially over on their sides. He notified Belt Railway, which immediately sent inspector Rodeck, who inspected the load at 1:00 P.M. on August 11.

From Rodeck's report and testimony, it appears that the 6-x-8-inch timber that ran along the top width of the west end of the car had broken and no longer supported the beams, which had shifted about two feet toward the west end of the car. The bundle of beams running along the south length of the car was leaning against the bundle

of beams running along the north length of the car. Some of the vertical wooden timbers were lying on the floor of the car. The load was in "bad-order" condition, but he did not see anything wrong with the gondola car. No "bad-order" tags were placed on the car. The car was already on the consignee's premises and required no further movement. No "bad-order" report form was filed, as that is a form for internal use of the railroad to show damage to a car. He filed only a damaged freight form, which stated that "Abrasion was made at points where tipped unit [beams] made contact with other unit and also side of car," and that, "Due to the fact the car was not unloaded the full extent of damage could not be determined."

Rodeck testified further that he did not instruct Greenwood Lumber how to unload the gondola car, or offer to have the railroad unload it. He did authorize the consignee to "go ahead," indicating that as far as Belt was concerned, it had investigated the damage to the load. There is no evidence that Greenwood rejected the load.

The following day, August 12, Bournazos, the president of Greenwood, proceeded to unload the gondola car. According to plaintiff's testimony King Building Supply Company was in a hurry to get the beams it ordered from Greenwood.

Bournazos was assisted in the unloading operations by plaintiff and another Greenwood employee, all of whom were experienced in unloading heavy trusses and had seen many shifted loads. With a fork lift they straightened the south bundle of beams which was tilting against the north bundle. Bournazos and another employee then chained the west end of the south bundle to the gondola car, but left the east end of the south beams standing free. They raised the north bundle of beams, using a fork lift on one end and the electric hoist on the other end. However, they could not raise those beams high enough to clear the single remain-

ing vertical stake which projected above the side of the gondola car.

Plaintiff re-entered the gondola car from the west end, walked the length of the car, under the raised beams, to the vertical stake which was near the east end. After loosening the wire attaching the stake to the car, he removed the stake and tossed it to the ground. As he worked plaintiff was facing north, and as he turned east to leave the car from the east end, he saw the east end of the south beams moving toward him. He tried to stop the beams with his hands, but the beams pinned him against the side of the car. He was squeezed until he turned blue. Bournazos and the fellow employee managed to place supports under the north bundle, and used the fork lift to free plaintiff from the south beams. Plaintiff was given artificial respiration, revived, but severely injured as a result of the accident.

The jury verdict for plaintiff was reversed by the appellate court essentially on the ground that there is no breach of any legal duty by a carrier upon which liability may be founded when injuries occur in the process of unloading damaged lading, where the carrier has not assumed any responsibility for the unloading, in the absence of proof of a defect in the car itself which caused the injuries.

On this appeal plaintiff contends that the defendant Belt Railway had a duty to provide the employees of the consignee with a safe place to work while unloading the beams, that such duty was breached by the damaged condition of the lading, and that defendant's liability for that condition continued even though plaintiff's employer accepted and unloaded the damaged lading in the manner described.

Defendant argues that as a delivering carrier it owed the consignee and his employees no more than the duty to reasonably inspect the car and lading and to warn of any condition that made it unsafe, and since the consignee here

was fully aware of the damaged condition of the lading and proceeded to unload it in a negligent manner, defendant owed no further duty. Defendant argues further that plaintiff's injuries were proximately caused by his own contributory negligence and that of his employer.

In support of his position plaintiff contends that *Rylander* v. *Chicago Short Line Railway Co.*, 17 Ill.2d 618, is a determinative authority, which was misinterpreted by the appellate court. In the *Rylander* case the plaintiff fell from the dome of a tank car while using a wrench to secure a bolt encrusted with dried creosote on the dome cover. The tank car was delivered by the defendant carrier to the premises of plaintiff's employer and was not inspected by anyone. The court held that the carrier breached its duty to inspect the defective car, and that such duty was not eliminated by showing that plaintiff's employer also failed to inspect the car.

The mere recital of the facts in the *Rylander* case indicates its inapplicability as a precedent herein. In *Rylander* the negligence of the railroad was its failure to inspect the defective tank car, and neither the consignee nor its employee had knowledge of any defect in that car; whereas in this case there was both inspection and actual knowledge of the defective lading by both the defendant Belt Railway and by plaintiff's employer. In *Rylander* the consignee had no opportunity to accept or reject the tank car; whereas here the consignee had the choice, accepted the cargo, and then directed plaintiff's unloading operations to cope with the defective lading.

There is no quarrel with the duty *Rylander* imposes on a carrier to deliver cars that are in a reasonably safe condition for the foreseeable uses of the recipient. However, that rule in no way disposes of the problem here. We are concerned not with failure to inspect or with unknown defects in the car, but with obvious defects in the load itself,

and the responsibility of the delivering carrier for the negligent unloading operations by a third party.

Neither *Rylander,* nor any other Illinois case directed to our attention by the plaintiff, imposes the duties asserted by plaintiff. *Wintersteen* v. *National Cooperage and Woodenware Co.,* 361 Ill. 95, involved an action by an injured employee of the consignee against the loading shipper for his failure to properly dunnage the car. Defendant, Belt Railway, merely received the gondola car from another carrier and had absolutely nothing to do with either its loading or unloading; consequently, the *Wintersteen* case has no application. Nor do we perceive the applicability of *Shipley* v. *Southern Pacific Co.,* 44 Ill. App. 2d 1, holding that the carrier of a sealed box car had no duty to the consignee to determine whether the car was safe for unloading.

The rule in other jurisdictions, as in Illinois, is that the carrier delivering a railroad car received from a connecting carrier owes the consignee and its employee engaged in unloading the car the duty of making a reasonable inspection of such car to determine whether it is reasonably safe for its foreseeable uses, and the duty to either repair or warn the consignee of any conditions which render the car unsafe for unloading. (*Rylander* v. *Chicago Short Line Railway Co.,* 17 Ill.2d 618, 621; *Kansas City Railway Co.* v. *Guillory* (Texas, 1964), 376 S.W.2d 72, 75; *Illinois Central Railroad Co.* v. *Crawford* (Miss., 1962), 143 So. 427, 429; *Pellegrini* v. *Chicago Great Western Railway* (7th cir., 1964), 319 F.2d 447.) Such duty, however, extends only to hidden defects. The delivering carrier is not liable to one who had notice or warning of the defect. 75 C.J.S. 335; *Illinois Central Railroad Co.* v. *Crawford,* 244 Miss., 300, 143 So. 427, 431; *Fisher* v. *Minneapolis & St. L. Ry. Co.* (8th cir., 1952), 199 F.2d 308, 312; *State of North Dakota for benefit of Workmen's Compensation Fund* v. *Great Northern Railway Co.* (8th cir., 1948); 155 F.2d

1005, 1008; *Southern Railway Co. v. Edwards* (5th cir., 1930), 44 F.2d 526, 527; *Yandell v. National Fireproofing Corp.*, 239 N.C. 1, 79 S.E.2d 223, 227, 229; *Nashville Bridge Co. v. Ritch* (5th cir., 1960), 276 F.2d 171, 179.

Analogy may be made between the case at bar and *Illinois Central Railroad Co. v. Crawford*, 244 Miss. 300, 143 So. 427. There the employee of the consignee, a heavy equipment operator, was injured unloading a defective load of poles from a delivering flat car. As in this case, "the condition [bad-order] of the shipment was apparent to the consignee and its servants at the time they attempted to unload it." The consignee, nevertheless, directed its servants to cut the bands which encircled the poles, rather than pull them apart with the drag line, and, as a result, the poles rolled down and injured the plaintiff. The court reviewed at length the liability of the delivering carrier for a defective lading to the consignee's employee engaged in unloading operations. After assuming that the load was disturbed by the act of the carrier (just as it has been assumed herein that the 6-x-8-inch cradle timber at the west end of the gondola broke through action of Belt Railway) the court held that "the Railroad Company was not required to unload the poles for the consignee, it was only required to notify the consignee of any danger in the shipment of freight and equipment known to the carrier, to the end that the consignee might be warned of the danger." The court in denying a duty, emphasized factors which are also present here: the consignee was experienced in the particular unloading operation, had proper heavy equipment adapted to that purpose; and "the defective condition of the load of poles was not only obvious to a casual observer, but was in fact observed by the consignee and its servants." The court expressly held that under such circumstances, where the injured person had knowledge of the defects in a shipment, "the duty to give warning disappears." After citing with approval *Southern Railway Co. v. Edwards* (5th cir.,

1930), 44 F.2d 526, the court explained that the rule requiring notice and warning to consignees was similar to the common-law rule respecting the duties of owners of buildings and land to invitees, whereby there is no liability for injuries from dangers that are obvious.

A similar approach was taken in *Kansas City Southern Railroad Co.* v. *Guillory* (Texas, 1964), 376 S.W.2d 72, 75, and in *State of North Dakota for benefit of Workmen's Compensation Fund* v. *Great Northern Railway* (8th cir., 1948), 155 F.2d 1005, 1008.

The shifted cargo and tilting of the south bundle of beams against the north bundle, caused by the broken cradle timber on the west end of the gondola, were all obvious and known by the consignee, Greenwood Lumber, Inc., and by plaintiff. The defective lading was accepted by Greenwood, subject to a claim for damaged freight.

There is no evidence to support plaintiff's attempted inference that the car was unloaded on the "go ahead" signal of Belt Railway's inspector Rodeck to ascertain the damage. Quite to the contrary, a careful reading of the record indicated Rodeck's "go ahead" remark indicated only that he had completed his investigation of the damaged lading. He in no way authorized or directed the unloading. In fact, Greenwood Lumber, Inc. and plaintiff did not unload the car until the following day, and did so, not to ascertain damages, but because its customer, King Building Supply Co., was in a hurry for the beams.

It is our judgment, therefore, that inasmuch as Belt Railway inspected the defective lading, and the condition was obvious and known by the consignee and its employees, who were experienced in unloading heavy trusses, the delivering carrier had no further duty to the consignee's employees which could be deemed to have been breached by it.

This analysis supports the conclusion of the appellate court. It is unnecessary, therefore, to consider the issues of proximate cause, contributory negligence, or the indem-

54

nity agreement which were interposed in the supplemental briefs in the event the decision of the appellate court, finding no breach of duty, was deemed in error.

Moreover we perceive no substance to plaintiff's argument that an unreasonable classification is created between railroad employees and other persons in violation of the due process and equal protection guarantees of the Federal and State constitutions, inasmuch as the common-law rules of negligence and duty relating to obvious and known defects are applicable to all persons alike and not limited to railroad employees.

The judgment of the appellate court reversing without remanding the jury verdict for plaintiff was in accordance with law and is affirmed. *Judgment affirmed.*