JOHN YAKUPCIN, JR., Plaintiff-Appellant, *v.* GEORGE P. BAKER *et al.*, Trustees, Defendants-Appellees.

First District (5th Division)   No. 79-31

Opinion filed April 25, 1980.

Robert W. Rooney, Sr., of Chicago, for appellant.

Lord, Bissell & Brook, of Chicago (Robert P. Schmidt and Hugh C. Griffin, of counsel), for appellees.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

The sole issue presented in this appeal is the propriety of a summary judgment entered in favor of defendants.

Plaintiff brought this suit after sustaining injuries while loading a boxcar at the Owens-Illinois plant in Streator, Illinois, where he was employed. The boxcar in question, owned by the Santa Fe Railroad, was identified as ATSF 521394. It was equipped with load dividers or

bulkheads which could be moved back and forth on tracks inside the car so that its load may be divided or prevented from shifting during transit.

The car was first loaded in Texas and then taken to a warehouse in Indianapolis by Santa Fe and Penn Central. It was unloaded there with nothing irregular having been noted concerning the condition of the car. It was then taken by Penn Central to the Owens-Illinois plant in Gas City, Indiana, where it was partially loaded and sealed by Owens-Illinois employees and then taken to Chicago by Penn Central, where it was transferred to the control of Burlington Northern, Inc., which eventually delivered the boxcar to the Owens-Illinois plant in Streator, Illinois. There it was to be further loaded by plaintiff and his co-employee, George Phillips.

As related by plaintiff in his deposition, Phillips opened the exterior door of the car, and they both entered. Only the north end of the car contained freight, and plaintiff first walked to the south end of the car, intending to move the load divider back to the north end so that it would be flat against the opposite bulkhead. He looked at the tracks which guided the divider and noticed nothing irregular. He then lifted the handle on the south load divider which properly released the pins at the top and bottom of the divider to permit it to slide back and forth on its rollers. As he started to pull the divider toward him, it fell from its track and struck him.

Plaintiff filed this suit for personal injury with count I alleging negligence on the part of defendants Santa Fe, Burlington Northern, and Penn Central, and count II asserting a products liability action against Transco, Inc., the manufacturer of the load dividers. Summary judgments were granted in favor of defendants Santa Fe, Burlington Northern, and Transco under section 57 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 57), and no appeal has been taken therefrom.

In support of its motion for summary judgment, Penn Central refers to four documents which were prepared in Gas City, Indiana, and pertained to ATSF 521394. The first, an "Industry Switch List," was prepared by a Penn Central conductor, and it showed that ATSF 521394 was placed on track 6 of the Owens-Illinois plant in Gas City on July 3, 1972. The second, a "Switch Order" prepared by an Owens-Illinois employee, indicated that the car was at door 10, track 6, and ready to be moved on July 4, 1972. The third, another "Industry Switch List" prepared by a Penn Central conductor, revealed that the loaded car was in fact moved from track 6 on July 4, 1972. The fourth document, a "Straight Bill of Lading" prepared by an employee of Owens-Illinois, disclosed that the car was loaded with 842 packages of glass bottles in Gas City, sealed, and tendered to Penn Central; and that the load was

subsequently transferred at Streator, Illinois, to another car, RBWX 79615, because of "car failure." The attached affidavit of W. D. Chapman, a terminal manager employed by Consolidated Rail Corp. (successor in interest to Penn Central), stated that the documents were true and accurate copies of business records.

Another attachment was the affidavit of Fred C. Harper, a Penn Central freight agent, stating that when he received the above bill of lading from Owens-Illinois, it contained a statement that ATSF 521394 was "in apparent good condition."

Penn Central also relied upon portions of the depositions of Thomas L. Nelson and Paul Waggoner. Nelson, an employee of Owens-Illinois at Gas City, stated that on July 5, 1972, he reported for work at 11 p.m. at the Gas City plant; that he loaded a Santa Fe boxcar on that date but could not recall its number; that he believed the car was located at door 10, track 6, but was not positive of that fact; that he inspected the top of the north and south load dividers but noticed nothing unusual; that he pulled the south divider toward him, loaded the south end of the car and pushed the divider back without difficulty; that he loaded the north end of the car and, as he was pushing the north divider back against the ware, the divider came off the track; that up until that time the door was in good condition to the extent of his observation; and that he called his foreman, Paul Waggoner, who with Nelson eventually closed and sealed the car. Waggoner, who was Nelson's supervisor in July of 1972, stated that there was a problem with a load divider on a boxcar located at door 10, track 6, but that he did not recall the exact date; that he arrived on the scene with an individual named Burke after having been called by Nelson; that they lifted the faulty divider, put the pins into place, placed boards underneath it, and nailed wood to the side wall in an effort to remedy the difficulty; that he later notified his supervisor at Owens-Illinois of the problem but did not notify Penn Central, Burlington Northern, or Santa Fe; and that personnel at these railroads would have no knowledge of the occurrence unless notified by Owens-Illinois.

Relying on the above documents, affidavits and depositions, Penn Central argued essentially that when ATSF 521394 arrived at Gas City, the dividers were not defective, as indicated in Nelson's deposition testimony; that Penn Central had therefore breached no duty up to this point; that the first time a problem arose with the dividers was in Gas City when one came off its tracks; that at this time the car was under the control of Owens-Illinois; that Penn Central was never notified of this problem, and the car was sealed by Owens-Illinois; that the car was transferred by Penn Central under seal to Chicago, where Burlington Northern then took over its control and delivered it to Owens-Illinois, in Streator; that plaintiff was injured due to the same difficulty with the load divider experienced in Gas City by Owens-Illinois employees, Nelson and

Waggoner; that while the car was under seal, Penn Central was under no duty to enter and inspect it; and thus that Penn Central breached no duty at any time the car was in its control, and it was therefore not negligent.

Plaintiff, in his answer to Penn Central's motion for summary judgment, incorporated by reference the arguments, depositions and statements he relied on in his prior responses to the motions for summary judgment filed by the other defendants. Particularly relevant was a statement of Nelson made during a telephone conversation to the effect that he had no recollection of the specific car he loaded on July 5 since he did not know the numbers on the car. Further, plaintiff and Phillips stated in depositions that only one end of the boxcar in which plaintiff was injured contained freight. This appeal followed the grant of Penn Central's motion.

OPINION

■■ Plaintiff's sole contention is that the trial court erred in granting summary judgment. We note that summary judgment is proper only if the pleadings and affidavits show that the movant is entitled to it as a matter of law (*Manuel v. McKissack* (1978), 60 Ill. App. 3d 654, 377 N.E.2d 219; *American Buyers Club v. Zuber* (1978), 57 Ill. App. 3d 899, 373 N.E.2d 786), and that it is a drastic remedy which should be granted only when the right of the movant thereto is clear and free from doubt (*Marshall v. City of Chicago Heights* (1978), 59 Ill. App. 3d 986, 376 N.E.2d 657; *United Security Insurance Co. v. Mason* (1978), 59 Ill. App. 3d 982, 376 N.E.2d 653). Further, if a genuine issue as to a material fact exists, summary judgment is improper (*Sielski v. Tioga Homes, Inc.* (1978), 62 Ill. App. 3d 340, 379 N.E.2d 336; *Baier v. State Farm Insurance Co.* (1975), 28 Ill. App. 3d 917, 329 N.E.2d 543, *aff'd* (1977), 66 Ill. 2d 119, 361 N.E.2d 1100), and the opponent may rely upon reasonable inferences drawn from the materials considered on the motion in the determination of whether a genuine issue of material fact exists. (*Gehrman v. Zajac* (1975), 34 Ill. App. 3d 164, 340 N.E.2d 184).

In support of the judgment, Penn Central's position is that the documents, affidavits and deposition establish beyond question that it violated no duty with respect to car ATSF 521394. A railroad's duty regarding freight cars which it transports has been clearly set forth in a number of cases. As stated in *Jilek v. Missouri Pacific R.R. Co.* (1957), 13 Ill. App. 2d 518, 524, 142 N.E.2d 708, 711, a railroad is charged with the "duty to use ordinary care to inspect its railroad cars to see that the cars [are] reasonably safe before delivering them to the consignee." (Also see *Conway v. Belt Ry. Co.* (1968), 41 Ill. 2d 45, 241 N.E.2d 434; *Rylander v. Chicago Short Line Ry. Co.* (1959), 17 Ill. 2d 618, 161 N.E.2d 812; 30 Ill. L. & Prac. *Railroads* §154 (1957).) Further, it has been held that a railroad

which did not load the boxcar but received it sealed and then delivered it for unloading is not under a duty to inspect to determine whether it is safe for unloading. *Shipley v. Southern Pacific Co.* (1963), 44 Ill. App. 2d 1, 193 N.E.2d 862.

Essentially, Penn Central argues that car ATSF 521394 was in its control at only two relevant times prior to plaintiff's injury—first, while being delivered from Texas to Gas City; and second, while being delivered from Gas City to Chicago, and that it did not breach its duty to plaintiff at either time. With respect to its control over the boxcar up to its arrival at Gas City, Penn Central points to Nelson's deposition testimony that he noticed no irregularities in the load dividers of the car he examined at Gas City and that they initially worked properly. This, it argues, established that so far as the load dividers were concerned, ATSF 521394 was delivered by it to Owens-Illinois at Gas City in a reasonably safe condition. Regarding its control of that car after Owens-Illinois had sealed it in Gas City and turned it over to Penn Central for delivery to Chicago, Penn Central argues that, under the above law, it was under no duty to break the seal to search for defects. Thus, it asserts that the record establishes no breach of any duty to plaintiff with respect to ATSF 521394 and, thus, that the entry of summary judgment was proper.

■ Plaintiff argues, however, there remains a material question of fact as to whether the boxcar Nelson loaded in Gas City is the same boxcar which injured plaintiff. We agree. In this regard, we note that the various documents and business records relied upon by Penn Central—the industry switch lists, the switch order and the bill of lading—state that car ATSF 521394 was placed at door 10, track 6, for loading on July 3, 1972, and was removed on July 4. However, Nelson stated in his deposition that it was on July 5 that he worked at Gas City on a boxcar in which a load divider became untracked and Waggoner, his foreman, stated this occurrence took place sometime in July but that he did not know the exact date. Further, Nelson testified that he loaded both ends of the car at Gas City; whereas, plaintiff and his co-worker Phillips stated that the boxcar in which plaintiff was injured was loaded only at one end. Thus, an inference may reasonably be drawn that the boxcar worked on by Nelson on July 5 at Gas City, which he said was in good condition, may not have been ATSF 521394—the car in which plaintiff was injured. Accordingly, Penn Central's assertion, that because the car Nelson loaded in Gas City had been delivered by it in good condition and it had breached no duty up to that time, is unpersuasive. We are therefore led to the conclusion that a material question of fact exists as to whether Penn Central fulfilled its duty at all relevant times with respect to car ATSF 521394 and, in this light, we hold that summary judgment should not have been granted.

For the reasons stated, the order granting summary judgment in favor of defendant Penn Central is reversed, and this cause is remanded for further proceedings.

Reversed and remanded.

LORENZ and WILSON, JJ., concur.